The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-1663 Janssen Ortho v. United States. Mr. Eden, whenever you're ready. Good morning. May it please the court. The trial court erred when it disregarded the plain language of General Note 13 to grant the imported product, which is Darunavir et al., the duty-free status that Congress by statute and the President by proclamation have afforded only to Darunavir. This case presents a straightforward issue of plain language. Mr. Eden, this is Judge Wallach. I have a couple of questions for you, if you don't mind. On page of the blue brief, you argue that the CIT erroneously construed table one to the pharmaceutical appendix, the international non-proprietary named Darunavir, uniquely identifies the Darunavir molecule, not Darunavir ethylate. Are you challenging the CIT's conclusion that table one covers products described by the INN Darunavir, or are you challenging the CIT's finding that the INN for Darunavir ethylate is Darunavir? I believe the latter, Your Honor. The table one clearly says that it covers products, the preface of table one. So table one covers the product. We are challenging the CIT's legal interpretation of the statutory phrase Darunavir with the CAS number on table one. The trial court read that statutory phrase to cover a different product, the Darunavir ethylate product, not Darunavir. Mr. Ed, on page 14 of the blue brief, you say, and I'm quoting, without explanation, the CIT erroneously disregarded the CAS registry number identified in table one. Then you argue that even if not dispositive, the registry number must be evaluated in the course of identifying the covered products. What do you believe the CIT should have done differently? That is, if registry numbers are not dispositive, would the outcome be any different? Could it be any more than harmless error? Yes, Your Honor, it is more than harmless error. There are two pieces of information here, two statutory pieces of information. Do you agree that the registry numbers are not dispositive? It says so right there. Your Honor, the registry numbers are not dispositive of the product that is entitled to duty-free treatment. General Note 13 provides a framework, including tables one and two and three of the pharmaceutical appendix. So table one tells you what is the product that is duty-free by table one alone. There are two pieces of information for that, the INN, the international non-proprietary name, and the chemical abstract service number, the CAS number. Let me drill down on that. Is it your position that all products or just derivatives have to meet the requirements of both tables one and two? I am not sure I understand your question, Your Honor. I apologize. Okay. You say the purpose of table two is, and now I am quoting you, to identify the specific derivative forms of the products listed in table one that are afforded duty-free treatment. Correct. In order for Janssen's product to receive duty-free treatment, it has to be listed in both tables one and two. And so my first question is, is it your position that all products or just derivatives have to meet the requirements of both tables one and two? Just derivatives, Your Honor. Janssen could import Darunavir, the sticky oil product that it has, and it could import that duty-free under table one alone. The INN, the international non-proprietary name, and the CAS number, the CAS number, both identify, both statutory pieces of information that we have on table one identify Janssen's Darunavir sticky oil product. So your position then is that ethanolate is a derivative of INN Darunavir rather than as the CIT found, INN Darunavir. That's correct, Your Honor. There is no INN for the derivative product. You can use the INN for the base molecule, the sticky oil product, and refer to a product containing it. Darunavir ethanolate is manufactured by crystallizing Darunavir, the sticky oil, with ethanol. And that creates the derivative product, the new form of Darunavir, Darunavir ethanolate. But there is no separate international non-proprietary name for the derivative product. There is a separate CAS number. There is a separate CAS number that uniquely identifies the derivative product. One housekeeping question, although it's a messy housekeeping question. On page 57 of the Red Brief, Janssen says that Puerto Rico is founded on an antiquated structure based on the duties they collect. And they allege that Customs changed its tariff classification to make up for a $30 million budget shortfall. What have you got on that? That refers, Your Honor, to Janssen's claim of bias at the administrative level. I know. And that is not a... Go ahead. Or isn't it true? There was no bias at the administrative level, Your Honor. But even if there had been bias, which there is no evidence of here, that has been cured by a de novo review at the Court of International Trade. This is not an APA case where we have record review. The Court of International Trade had held a three-day bench trial on this matter. There was fact-finding. There was legal interpretation, which we'll hear about today. And any bias that could have been, although there was none, has been cured at the CIT level. There is also no remedy that Janssen seeks for that alleged bias. Janssen seeks only the refund of duties that it paid on the imported Deruniverethanolate. You're avoiding my question, unfortunately. I apologize. Did it happen, factually? No, Your Honor. There was no bias at the administrative level. There was no change in order to make up a budget shortfall? That's correct, Your Honor. There was no change to make up a budget shortfall. Janssen's claims in its protest and its application for further review were reviewed in detail. And there is a 20-plus page custom ruling letter that is persuasive on all of Janssen's different claims that it made. And there was no bias that went into that determination. Thank you. Just one other point on that. CBP's operations in customs operations in Puerto Rico are, in fact, as Janssen alleges, funded in part by duties collected there. And that is also true of the Virgin Islands and other funding structures like that. And that is a statutory framework. Your Honor, the statute at issue here is detailed, it is specific, and it leaves no room for ambiguity. Well, let me ask you about that, Mr. Endin. This is Judge Prost. Cable one is long, and it doesn't look to me to be particularly selective. In fact, I can't figure out how many products aren't on it rather than those that are. Doesn't it strike you at least as a policy matter that your position would be odd? Surely you agree that it would make no practical sense if your view that the liquid version of this chemical that no one in the world uses was on the list, but the marketed version was not. Isn't that an odd conclusion to reach? No, Your Honor. And I disagree with the premise of that. There is a use for Darunavir, the sticky oil. The use for that is to make the Darunavir ethanolate crystalline powder. And no one ingests the Darunavir ethanolate crystalline powder that Janssen imports. That is further manufactured into a finished pharmaceutical product, several different finished pharmaceutical products, including Symtusa, Prescovix, and Prezista, at least. Those are the FDA-approved products that contain the crystalline Darunavir ethanolate. So there is a definite commercial use for Darunavir, and Janssen chose to manufacture that. And then after it manufactures that, it crystallizes it with ethanol to make Darunavir ethanolate, and it imports that form. As to the other part of your question, Your Honor, about the detailed list, Table 1 is extremely detailed and includes thousands of different products by their international non-proprietary name and their CAS number. And both of those pieces of information refer to a set of information including the molecular formula and the chemical structure of each of those products. And the CAS number likewise gives you the molecular formula and the chemical structure. So both pieces of information point to the same thing, which is Darunavir, not Darunavir ethanolate. As to why that might be the case, Your Honor, the Uruguay Round Agreements Act gives the President the authority to negotiate trade agreements with our trading partners and then to permit reciprocal duty reductions as a result of advice of the International Trade Commission, the U.S. Trade Representative, and other congressional committees. And so then a presidential proclamation is issued granting a specific product duty-free treatment under the table. That's an authority that Congress specifically delegated to the President and the Court should not usurp that negotiation authority by granting a product that is clearly not listed on the table duty-free treatment under the table, under the table's entry for a different product. So what about, what kind of deference do we give the CIT here? They held a three-day trial. There were lots of experts that spoke directly to the question that we're debating this morning whether the two are the same or significantly different. Doesn't that fact-finding deserve deference by our Court? There's no facts at issue here, Your Honor. We are not here disputing the facts. We are here disputing seeking de novo review of the Court's legal interpretation of the statute of General Note 13 of Table 1. There's no dispute. There's relative evidence from experts presented in this three-day trial about the product and the terminology and the Court of International Trade judge heard all of those experts and reached a conclusion, right? Your Honor, if I may, the experts in the trial primarily were directed to Jansen's other claim that the product was a mixture of Darunavir and ethanol and that the chemical bonds between those two products were not sufficiently strong to make it a new chemical substance but rather it was simply a mixture that should be classified under Chapter 30. And so there were multiple PhDs and experts that testified on those issues and the Court of International Trade found against Jansen on that claim and found that Darunavir with anilate is a chemical substance separate and apart from Darunavir. And so most of the experts testified on that matter and found in favor of the government and that's not an issue that Jansen appeals here. Okay. Did we hear your buzzer go off? Yes. Okay. Why don't we hear from the other side and we'll reserve your time for rebuttal. Thank you. May I proceed, Your Honor? Yes, please. Good morning. Thank you. This is Greg Diskant representing Jansen. This was basically a very straightforward case of undisputed facts applied to a statutory language whose meaning is plain. Under Table 1, products described by international non-proprietary names are duty-free. Mr. Diskant, this is Jeff Wallet. I have a couple of questions for you. Sure. Has Jansen ever imported any other form of Darunavir? No, Your Honor. Has any other form ever been commercially available? Not in the United States, no. Okay. On page 19 of the blue brief, the government says Jansen had multiple opportunities to seek to add the ethanolate form to the pharmaceutical appendix when updates occurred in 2006 and 2010 but neglected to participate and only belatedly in 2013 applied. Why 2013 and why not before? That's quite easy to explain, Your Honor. Before, Jansen correctly, I believe, understood that the listing of Darunavir on Table 1 under its international non-proprietary name Darunavir included Darunavir ethanolate. That's exactly what the CIT found. There was no need to have the ethanolate listed. In 2011, customs abruptly changed its position after years of allowing Darunavir ethanolate to be imported duty-free under Table 1. As a result, Jansen both began litigating this case and as to protect itself, it also sought to add it to the pharmaceutical appendix explicitly. The pharmaceutical appendix has not been updated, however, since 2010. So that never came to pass. But to my mind, the important point is that Darunavir ethanolate is known by its INN Darunavir. This is a fact-finding. The CIT found, the INN for Darunavir ethanolate is Darunavir. That's finding number 19. That means that when you read the name INN Darunavir on Table 1, it includes Darunavir ethanolate. What deference does the District Court's fact-finding get? Well, first, there's been no challenge to its fact-finding. So that's a fact. Likewise, it's a fact that the CIT found that Darunavir ethanolate is a name by which Darunavir is known. That's also a fact that fits squarely into the language of the Chapeau of Table 1. So there is no factual dispute, but the facts fit squarely into the language of the Chapeau. Now, there's a question about is Table 1 and Table 2, are they intended to be inclusive or do they actually intentionally exclude anything? I think the answer has to be they do not intentionally exclude anything. The President told Congress in 1994 that he wanted all pharmaceuticals, including new pharmaceuticals as they're developed, to be duty-free. He said he would use Section 111B to implement that goal, that intent. Where possible, such as in Chapter 30, he's made the entire chapter duty-free. He hasn't gone through and said this one's in and this one's out. All goods under Chapter 30 are medicaments. They're all duty-free. He could not do that for Chapter 29 because that's organic chemicals. So there are many organic chemicals that are not used as pharmaceuticals. They're not duty-free. So the pharmaceutical appendix is an attempt at a comprehensive listing. This one happens to be an easy case because the nomenclature for solvates is that the solvate form is dropped from the name. Darunavir at all times has included all its solvate forms, which is Darunavir ethanolate. So there really is no support to the argument that any pharmaceutical was intentionally excluded. And there's no thought that Darunavir ethanolate on the fact-finding of the district court based on undisputed facts, which you can look at in the record, is duty-free. I'd like to just say a word about Judge Wallach's questions about the due process claim because we view that as a very, very serious claim. And you can look at some of the documents in the record in which customs officials explicitly noted that, for example, on page 4641, if this decrease of funding increases into the year, CTD will not be able to perform duty collection at the current level in Puerto Rico. Why does that fact have anything to do with whether we are or are not duty-free? These were, in our view, shocking facts. We had only limited discovery and the trial court severed the due process claim. But this, I think, is a serious problem and it would, in my view, enhance the public good if the court noted the antiquated nature of the funding structure of the Puerto Rico court. Let me just be clear. This is Judge Prout. Sorry to interrupt, but we don't reach that if we affirm the CIT's conclusion in this case, right? That's correct, Your Honor. I'm sorry. Judge Wallach is interested. No, of course. As far as other questions, I think this is a very simple case of plain meaning of a statute correctly applied on undisputed facts by the CIT. Hearing none, thank you. Thank you, Your Honor. Mr. Eden, you've got some time left on rebuttal. Thank you, Your Honor. Just two or three brief points. There would be no pharmaceutical appendix if all pharmaceutical products were duty-free. Congress here and the President have set up a detailed framework of multiple tables listing thousands of chemicals, hundreds of forms of those chemicals on Table 2. If all pharmaceutical products were duty-free, it would just say that. We would not need this sophisticated table structure to set that up. Clearly, the President and Congress in the Uruguay Round Agreements Act have set up a framework for negotiating duty discounts with our trading partners. The trial court's interpretation of Table 1, de Runevere and the CAS number as covering a different product, completely writes Table 2 out of existence because all of the forms of de Runevere are now duty-free under Table 1. For the second point about the commercial forms of de Runevere, right now Janssen makes de Runevere abroad and then it crystallizes it into de Runevere ethanolate abroad and it imports that form into the United States. Janssen had multiple options. It also had de Runevere hydrate, which it chose not to import for various reasons that it preferred the stability of the ethanolate form. There's testimony about that at the trial record. One last point, if I may, just about the customs in Puerto Rico. Customs in Puerto Rico did not change its mind about Janssen's product. Janssen imported this under the wrong CAS number and that came to customs' attention at a later point in 2011 when it looked into that matter and issued the ruling. Thank you. We thank both sides and the case is submitted.